STATE, RESPONDENT, *v.* WINTERROWD, APPELLANT.

(No. 5,966.)

(Submitted September 14, 1926.  Decided September 22, 1926.)

[249 Pac. 664.]

*Criminal Libel—Newspapers—When Publication Libelous Per Se—Official "Graft"—Definition — Defense—Justification— Conflict in Evidence—Effect on Appeal—Punishment—Fine and Imprisonment—Judgment.*

Criminal Libel—Newspapers—When Publication Libelous *Per Se.*
1.  In determining whether a publication is libelous *per se,* the language complained of must be construed in its relation to the entire article in which it appears; so construed, *held* that the statement published in a newspaper that the publisher would "continue to expose all graft and corruption," taken in connection with preceding assertions that an attachment proceeding had been brought against the paper in revenge for exposing the "dirty work" of plaintiff, a constable, and another, that plaintiff had acted unlawfully in other cases, and that he had formed a collusive partnership with such other person, in effect charged plaintiff with graft in connection with the administration of his office and was, therefore, libelous *per se.*

Same—Official "Graft"—Definition.
2.  The word "graft," when used in connection with the conduct of a public officer, implies sometimes actual theft and always want of integrity, and its use in that respect is actionable *per se.*

Same—Defense—Justification—Conflict in Evidence—Appeal.
3.  The verdict of the jury against defendant in an action for criminal libel will not be disturbed on appeal on the ground that in publishing the article complained of he acted with good motives and for justifiable ends, where the evidence on that issue was in conflict.

Criminal Law — Fine and Imprisonment in Jail if Fine not Paid — Judgment.
4.  The district court has authority in pronouncing judgment in a criminal cause to order that in default of payment of the fine imposed the defendant shall serve time in the county jail at the rate of one day for each two dollars of the fine.

[1]  Libel and Slander, 37 **C. J.**, sec. 633, p. 138, n. 51; sec. 634, p. 139, n. 55, 56, 57; sec. 640, p. 140, n. 97.
[2]  Graft, 28 **C. J.**, sec. 3, p. 756, n. 12; p. 757, n. 20, 22, 25; Libel and Slander, 36 **C. J.**, sec. 94, p. 1191, n. 91; 37 **C. J.**, sec. 703, p. 156, n. 3.
[3]  Criminal Law, 17 **C. J.**, sec. 3594, p. 264, n. 89.
[4]  Criminal Law, 17 **C. J.**, sec. 3221, p. 1367, n. 2 New; Libel and Slander, 37 **C. J.**, sec. 708, p. 157, n. 44 New.

1.  See 17 **R. C. L.** 313.
2.  See 17 **R. C. L.** 275.
4.  See 8 **R. C. L.** 270.

[77 Mont. 74.]

*Appeal from District Court, Cascade County; Stephen J. Cowley, Judge.*

ACTION by the State against William Winterrowd for criminal libel. Defendant appeals from the judgment of conviction and from the order denying his motion for a new trial. Affirmed.

*Mr. David J. Ryan,* for Appellant, submitted a brief.

Citing: *State* v. *Grimstead,* 10 Kan. App. 74, 61 Pac. 975; *People* v. *Hebberd,* 96 Misc. Rep. 617, 162 N. Y. Supp. 80; *State* v. *Rice,* 56 Iowa, 431, 9 N. W. 343; *State* v. *Conable,* 81 Iowa, 60, 46 N. W. 759; *Commonwealth* v. *Snelling,* 15 Pick. (Mass.) 321; *State* v. *Verry,* 36 Kan. 416, 13 Pac. 838; *State* v. *Clyne,* 53 Kan. 8, 35 Pac. 789; *State* v. *Sefrit,* 82 Wash. 520, 144 Pac. 725.

*Mr. L. A. Foot,* Attorney General, and *Mr. I. W. Choate,* Assistant Attorney General, for the State, submitted a brief; *Mr. Choate* argued the cause orally.

MR. JUSTICE STARK delivered the opinion of the court.

The defendant was convicted of the crime of criminal libel and sentenced to pay a fine. From the judgment and an order denying his motion for a new trial he has appealed.

1. The information charges that one Bert Christie was a duly [1] elected, qualified and acting constable of Great Falls Township, Cascade county; that the defendant was the editor and proprietor of "Town Topics," a newspaper of general circulation in said county, and that on December 10, 1925, the defendant, with intent to injure and impeach the reputation of said Christie and thereby expose him to public contempt,

did falsely, wantonly and maliciously defame said Christie by printing and publishing in said newspaper the following:
"Byron and Bert are Pards. Gross Violation of Law; Will Co. Attorney Take Action.

"There can no longer be a particle of doubt that Constable Bert Christie is still acting as stoolpigeon for Byron DeForest, also there is a grave suspicion that Judge Wilson's court is strangely biased whenever DeForest is concerned in a court issue.

"It all works out something like this: Byron DeForest wishing to make an attachment on account calls in Bert, the constable, and instructs him to go and find out who is indebted to such and such a person, after obtaining this information he is further instructed to carry out the legal function of attachment, which Bert does unhesitatingly.

"We have evidence to prove our assertions, and are prepared to give such information to the prosecuting attorney's office any time it wishes to use same to bring ouster proceedings against this notorious constable for malfeasance of office and an open and flagrant violation of the laws of the state of Montana. No longer ago than last week Bert Christie circulated the Town Topics' advertisers, inquiring of them whether or not they were indebted to Town Topics; those that admitted they were, he served a writ of attachment and in this manner tied up the account. Town Topics has since given bonds to cover the attachment of accounts and they have all been released.

"The attachment proceedings instituted against Town Topics by Byron DeForest and Constable Christie involves an old claim of Stone the Clothier, contracted when Town Topics was the property of the Cascade Trades & Labor Assembly, an account which the present owner is not responsible for in the least degree. If there is anything due Stone, which we doubt very much, the present owners could not be held to account.

"However, whatever the circumstances may be, Bert Christie is acting in an unlawful manner, not only in this instance, but in other cases previous to this. He has taken accounts personally for collection and then turned these accounts over to DeForest Collection Agency, thus forming a sort of collusive partnership between the Bad Bill Collector and the office of Constable Bert Christie.

"Will the county attorney make a move to investigate the conduct of Constable Christie at this time? If he does his duty we don't see how he can get away from it and bring ouster proceedings against Christie. * * * .

"As far as the account against Town Topics is concerned that does not amount to anything, the attachment was brought through spite work by Bert and Byron in revenge for the manner in which Town Topics has exposed their dirty work in the past.

"Let them go to it! we say, this isn't the first pair of renegades that Town Topics has had to deal with, nor in all probability will it be the last, inasmuch as we will continue to expose all graft and corruption regardless of who the guilty persons may be."

Counsel for defendant urges in his brief that the matter stated in the foregoing publication was not libelous *per se* and for that reason the information does not state a public offense. The statute under which the information was drawn (sec. 10989, Rev. Codes 1921) declares: "A libel is a malicious defamation, expressed either by writing, printing, or by signs or pictures, or the like, tending to blacken the memory of one who is dead, or to impeach the honesty, integrity, virtue, or reputation, or to publish the natural or alleged defects of one who is alive, and thereby to expose him to public hatred, contempt or ridicule"; and by section 10990, "every person who wilfully, and with a malicious intent to injure another, publishes, or procures to be published, any libel, is punishable by fine not exceeding five thousand dollars, or imprisonment in the county jail not exceeding one year."

We may forego a discussion of whether the statements made in the forepart of the publication were libelous *per se* and pass to a consideration of the final paragraph. The statement contained therein: "We will continue to expose all graft and corruption," standing by itself, might be taken as a declaration of a wise editorial policy, but "in determining whether a publication is libelous *per se* the language complained of * * * must be construed in its relation to the entire article in which it appears, for its ordinary meaning may be limited or changed by the circumstances or by qualifications expressly annexed to its use." (*Paxton* v. *Woodward,* 31 Mont. 195, 107 Am. St. Rep. 416, 3 Ann. Cas. 546, 78 Pac. 215; *Cooper* v. *Romney,* 49 Mont. 119, Ann. Cas. 1916A, 596, 141 Pac. 289.) So, in determining the effect of the quoted words, the language must be construed in relation to the entire published article. The first part thereof, after reciting the circumstances of the attachment against "Town Topics" and alleging that it was brought in revenge for the manner in which "Town Topics" had exposed the "dirty work of Bert and Byron," made the assertion that Christie had acted in an unlawful manner "in other cases previous to this" and that he had formed a collusive partnership with the bad bill collector, DeForest. The necessary inference to be drawn, then, is that Christie who, according to the article, had acted in an unlawful manner in other cases and who had formed a collusive partnership with the bad bill collector, had been guilty of graft in connection with the administration of the affairs of his office of constable.

In *Cooper* v. *Romney, supra,* this court had occasion to consider the effect of the use of the word "graft" when used
[2] in connection with the conduct of a public officer, and in doing so said: "As ordinarily employed to characterize the conduct of a public officer that word has a well understood significance. It implies sometimes actual theft and always want of integrity. That its use in this sense is actionable *per se* is no longer open to question."

From these considerations it is apparent that the article in question was libelous *per se* in that it tended to impeach the honesty of Christie and to impute to him a want of integrity in connection with his office, thereby exposing him to public contempt, from which it follows that counsel's objection that the information does not state a public offense cannot be sustained.

2. The authorship of the article and its publication and [3] circulation by the defendant were admitted by him at the trial; but his counsel argues that the whole testimony shows that the matter charged as libelous was true; that in writing, publishing and circulating the same the defendant did so with good motives and for justifiable ends.

Section 10992, Revised Codes of 1921, declares that if it appear to the jury that the matter charged as libelous is true and was published with good motives and for justifiable ends, the party shall be acquitted; but this section further declares that in such cases "the jury have the right to determine the law and the fact."

Turning to the testimony it is found that the defendant undertook by evidence to establish the truth of the statements made in the published article, and that he published them in good faith and for justifiable ends. This testimony was contradicted by witnesses on behalf of the state. The jury having heard all the testimony, by their verdict found against the defendant's contentions and on the record presented we cannot say that their verdict was not justified by the evidence.

3. The jury fixed the punishment to be imposed upon the de-
[4] fendant at a fine of $200. The court, in pronouncing judgment provided that in default of payment of said fine the defendant should serve time in the county jail of Cascade county at the rate of one day for each $2 of said fine. Counsel for defendant contends that the court was without authority to make this provision in the judgment. This contention was decided adversely to the contention of counsel, in

*State ex rel. Poindexter* v. *District Court,* 51 Mont. 186, 149 Pac. 958.

No error appearing in the record the judgment is affirmed.

MR. CHIEF JUSTICE CALLAWAY, MR. JUSTICE MATTHEWS and HONORABLE THEODORE LENTZ, District Judge, sitting in place of MR. JUSTICE HOLLOWAY, disqualified, concur.

MR. JUSTICE GALEN, being absent, did not hear the argument and takes no part in the foregoing decision.